## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

NICHOLAS ELGAR,

                               Plaintiff,

           - against -

SEAFIELD CENTER, INC., SEAFIELD SERVICES, INC. and LYNN DORIS,

                           Defendants.

------------------------------------------------------------------X

Case No.: 18-cv-0591

(ARL)

### SETTLEMENT AGREEMENT AND RELEASE

Plaintiff Nicholas Elgar ("Plaintiff"), on behalf of himself and the "Class Members" (as that term is defined in Section 1.5 below) and Defendants Seafield Center, Inc. and Seafield Services, Inc. (together with Seafield Resources, Inc., the "Defendants," and Defendants collectively with Plaintiff the "Parties"), through their respective counsel, hereby enter into this Settlement and Release Agreement (the "Agreement") to resolve all claims in the Proposed Second Amended Complaint for Settlement, without further litigation, as that term is defined below.

### RECITALS

A.    WHEREAS, Plaintiff filed a Complaint *pro se* on January 26, 2018, and an Amended Complaint *pro se* on June 7, 2018, in the above-captioned action (the "Litigation") alleging, *inter alia*, that Defendants Seafield Center, Inc. and Seafield Services, Inc. failed to properly pay Plaintiff for all hours worked in violation of federal and state law;

B.    WHEREAS, by correspondence dated February 11, 2019, Plaintiff asserted class and collective action wage and hour claims against Defendants under the New York Labor Law ("NYLL") and the Fair Labor Standards Act ("FLSA") and sought recovery of, among other things, unpaid overtime wages, liquidated damages, and attorneys' fees and costs, and asserts such claims in the Proposed Second Amended Complaint for Settlement attached as Exhibit A;

C.    WHEREAS, Plaintiff never has asserted claims under the NYLL or FLSA against Lynn Doris ("Ms. Doris");

D.    WHEREAS, the Parties have exchanged data and documents and engaged in lengthy settlement negotiations;

D.    WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in a recovery that is less favorable to Plaintiff and Class Members, and that would not occur for several years, Class Counsel is satisfied that the terms and conditions of

this Agreement are fair, reasonable, and adequate, and that this Agreement is in the best interests of the Class Members; and,

E.  WHEREAS, Defendants have denied and continue to deny all of the allegations made by Plaintiff, have denied and continue to deny that the Class Members, or any putative FLSA Collective Members, were denied overtime under the NYLL, the FLSA, or any other statute, have denied and continue to deny that Defendants are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Proposed Second Amended Complaint for Settlement and have denied and continue to deny that the claims asserted in the Proposed Second Amended Complaint for Settlement are appropriate for class or collective treatment, except for settlement purposes only;

F.  NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.  DEFINITIONS

1.1  Agreement.  "Agreement" means this Settlement Agreement and Release.

1.2  Application for Final Approval. "Application for Final Approval" means documents and materials to be filed with the Court pursuant to Section 2.7, seeking final approval of the settlement.

1.3  Bar Date.  "Bar Date" means the date as set by the Court by which any Class Member must submit an Opt-out Statement pursuant to Section 1.24.

1.4  Class Counsel.  "Class Counsel" or "Plaintiff's Counsel" means Outten & Golden LLP.

1.5  Class Members.  "Class Members" means all individuals who were employed simultaneously in non-exempt positions by two or more of the following entities: Seafield Center, Inc., Seafield Services, Inc., and/or Seafield Resources, Inc., and who, according to Seafield's records, worked in non-exempt positions for such entities for more than forty (40) hours per week in at least one workweek between February 11, 2013 and the date of execution of the Final Settlement Agreement and allegedly did not receive overtime compensation for hours worked over forty (40) in such workweek.

1.6  Class List. "Class List" means a list of all Class Members, identified by name, last-known address, last known personal e-mail address (if known), and social security number, as well as, for each Class Member, information necessary to calculate his or her Individual Settlement Amount, contained in a confidential document that Defendant shall provide to the Settlement Claims Administrator.  The Class List is to be used by the Settlement Claims Administrator to effectuate settlement, and may not be used for any other purpose.  Notwithstanding any other provision herein, however, within five (5) days after the expiration of the Bar Date, the Settlement Claims Administrator shall provide Class Counsel and Defendants' Counsel with a list of the names and addresses of Class Members who do not opt out of this Agreement to be used solely for purposes of administering this Agreement.

1.7  Costs and Fees. "Costs and Fees" means any and all fees, costs, and expenses associated with this Litigation, including without limitation attorneys' fees, filing fees, expenses and professional fees, accountant fees and costs, and Settlement Claims Administrator's fees and costs, except excluding Defendants' attorneys' fees and costs and excluding any fees and costs incurred by Plaintiff *pro se* prior to the assertion of the Class Claims.

1.8  Court. "Court" shall mean the United States District Court for the Eastern District of New York, before the Honorable Magistrate Judge Arlene R. Lindsay.

1.9  Days. "Days" means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater, unless otherwise indicated.

1.10  Defendants. "Defendants" means Seafield Center, Inc., Seafield Services, Inc. and Seafield Resources, Inc.

1.11  Defendants' Counsel. "Defendants' Counsel" means Brian J. Shenker, Esq. and Kathryn J. Barry, Esq. of Jackson Lewis, P.C., 58 S. Service Road, Suite 250, Melville, NY 11747.

1.12  Employer Payroll Taxes. "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

1.13  Fairness Hearing. "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.14  Final Approval Order. "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Costs and Fees, and dismissing the Litigation with prejudice.

1.15  Final Effective Date.   Provided no appeal of the Final Approval Order is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Approval Order approving this Agreement as provided in Section 2.7.  If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (i) any appeal from the Final Approval Order has been finally dismissed; (ii) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (iii) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; or (iv) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form entered by the Court.

1.16  FLSA Claims. "FLSA Claims" means all wage and hour claims which could have been asserted against Defendants under the FLSA based on the facts asserted in the Proposed Second Amended Complaint for Settlement, including, without limitations, all claims for unpaid overtime, regular, straight or minimum wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, to the maximum possible extent permitted by law as against any or all Defendants accruing up to the date of the Preliminary Approval Order.

1.17    FLSA Collective Members.  "FLSA Collective Members" means all Class Members employed from February 11, 2016 through the date of execution of the Final Settlement Agreement and who timely opt in to this settlement by cashing or otherwise negotiating a Settlement Check.

1.18    Gross Settlement Fund.  "Gross Settlement Fund" means Eighty Five Thousand Dollars and Zero Cents ($85,000.00), the maximum amount Defendants have agreed to pay, exclusive of Employer Payroll Taxes.

1.19    Named Plaintiff.  "Named Plaintiff" means Nicholas Elgar.

1.20    Net Settlement Amount.  "Net Settlement Amount" means the Gross Settlement Fund less Costs and Fees.

1.21    Notice or Notices.  "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit as authorized in the Preliminary Approval Order.

1.22    NYLL Claims.  "NYLL Claims" means all wage and hour claims which could have been asserted against Defendants under the NYLL based on the facts asserted in the Proposed Second Amended Complaint for Settlement, including, without limitations, all state law claims for unpaid overtime, regular, straight or minimum wages, and related claims for penalties, statutory notice or statement violations, interest, liquidated damages, attorneys' fees, costs, and expenses, to the maximum possible extent permitted by law as against any or all Defendants accruing up to the date of the Preliminary Approval Order.

1.23    Objector.  "Objector" means an individual who properly files an objection to this Agreement, and does not include any individual who opts out of this Agreement.

1.24    Opt-out Statement.  "Opt-out Statement" means a written, signed statement that an individual Class Member has decided to opt out and not be included in this Agreement.

1.25    Preliminary Approval Order.  "Preliminary Approval Order" means the Order entered by the Court: (i) certifying the Class pursuant to F.R.C.P. 23 solely for purposes of effectuating the Agreement; (ii) conditionally certifying the FLSA Collective pursuant to 29 U.S.C. § 216(b) solely for the purposes of effectuating the Agreement; (iii) preliminarily approving the terms and conditions of this Agreement; (iv) appointing Class Counsel as defined above; (v) directing the manner and timing of providing Notice to the Class Members; and (vi) setting dates to effectuate the terms of this Agreement, including the Bar Date and the date of the Fairness Hearing.

1.26    Proposed Second Amended Complaint for Settlement.  "Proposed Second Amended Complaint for Settlement" means the Proposed Second Amended Complaint attached hereto as Exhibit A, which Class Counsel shall submit without material variation to the Court in concurrence with a motion for preliminary approval of the Settlement.  In the event the Court finally approves the Settlement, the Proposed Second Amended Complaint for Settlement shall be deemed timely filed and shall be the operative complaint in the above-captioned litigation.  In the event the Court does not finally approve the Settlement, the Proposed Second Amended Complaint for Settlement shall

be void *ab initio* and the operative Complaint in this action shall be Plaintiff's Amended Complaint (Docket Entry 18).

1.27    Qualified Settlement Fund or QSF. "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator in conformity with Treasury Regulation § 1.46B-1, *et seq.*, for the Net Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Net Settlement Amount.

1.28    Releasees. "Releasees" shall mean Defendants, as defined herein, their respective affiliates, subsidiaries, predecessors, successors and all other related entities, including but not limited to all of their incumbent and former officers, directors, owners, members, managers, shareholders, investors, agents, attorneys, employees (including Ms. Lynn Doris), fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.29    Relevant Period. "Relevant Period" means February 11, 2013 through the date the Court finally approves this Agreement.

1.30    Settlement Claims Administrator. "Settlement Claims Administrator" means the qualified administrator selected pursuant to Section 2.2 to mail and email, to the extent the Class Member's email address is known, the Notices and administer the calculation, allocation, and distribution of the QSF or perform any administrative duties pursuant to Section 2.2. The Settlement Claims Administrator's fees and costs shall be borne by the QSF.

1.31    Settlement Checks. "Settlement Checks" means checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement – or otherwise referred to as their Individual Net Amount.

## 2.    PROCEDURAL ISSUES

2.1    Settlement Class. For purposes of settlement only, the Parties agree to class certification pursuant to F.R.C.P. 23 and 29 U.S.C. § 216(b) to include all Class Members and FLSA Collective Members, respectively.

### 2.2 Settlement Claims Administrator.

A.    **Retention.** Prior to the filing of a Motion for Preliminary Approval, Class Counsel shall engage a Settlement Claims Administrator mutually acceptable to the Parties.

B.    **Funding Settlement Claims Administrator.** The Settlement Claims Administrator's costs and expenses, not to exceed $4,100, shall be paid from the QSF as approved by the Court.

C.    **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice, (ii) performing a skip trace up to two (2) times and resending, within one day of receipt, any Notice returned without a forwarding address or resending to those

with a new forwarding address; (iii) corresponding with the Parties regarding requests or communications made by the Parties; (iv) preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement, whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion and objections from Class Members that the Settlement Claims Administrator receives; (vi) keeping track of requests for exclusion, objection or otherwise including maintaining the original mailing envelope in which the request was mailed; (vii) providing Class Counsel and Defendants' Counsel with a list of the names and addresses for Class Members who do not opt out after the expiration of the Bar Date; (viii) distributing the Settlement Checks and/or Court-approved Costs and Fees; (ix) preparing, sending and/or wire-transferring Class Counsel's attorneys' fees, expenses, and costs; (x) mailing Settlement Checks in accordance with this Agreement and  the Final Order; (xi) performing a skip trace and resending, within one day of receipt, any Settlement Check returned without a forwarding address or resending to those with a new forwarding address; (xii) responding to inquiries of Class Members regarding procedures for filing objections, opt-out forms, and Claim Forms; (xiii) referring to Class Counsel all inquiries by Class Members regarding matters not within the Settlement Claim Administrator's duties specified herein; (xiv) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (xv) promptly apprising counsel for the Parties of the activities of the Settlement Claims Administrator; (xvi) maintaining adequate records of its activities, including the dates of the mailing and emailing, as applicable, of Notices, returned mail and other communications and attempted written or electronic communications with Class Members; (xvii) confirming in writing to Class Counsel and Defendants' Counsel and the Court its completion of the administration of the Agreement; (xviii) timely responding to communications from the Parties and their counsel; (xix) providing all information, documents and calculations necessary to confirm the Final Settlement Amount; (xx) providing Defendants' Counsel with a photocopy of each endorsed settlement check; and (xxi) such other tasks as the Parties mutually agree.

D.    **Access to the Settlement Claims Administrator.**  The Parties will have equal access to the Settlement Claims Administrator throughout the claims administration period.  Class Counsel and Defendants shall provide the Settlement Claims Administrator with the information necessary to calculate the Settlement Checks or Net Amount for the individual Class Members, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3    Preliminary Approval Motion.**

A.    On or before July 14, 2020 (or other date set by the Court), Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion") which shall include (i) the Proposed Second Amended Complaint for Settlement attached hereto as <u>Exhibit A</u>; (ii) the proposed Notice attached hereto as <u>Exhibit B</u>; (iii) the proposed Preliminary Approval Order, which shall be drafted by Class Counsel and approved by Defendants; (iv) an executed version of this Agreement; and, (v) the necessary documents, memorandum, affidavits and exhibits for the purposes of certifying a Class under F.R.C.P. 23 and a Collective under 29 U.S.C.  § 216(b) for settlement purposes only, and

preliminarily approving the Agreement. Defendants may review the terms of the Preliminary Approval Motion and attachments to ensure they are consistent with this Agreement prior to it being filed. Defendants may also review the proposed Preliminary Approval Order prior to the agreement being executed, and any other documents filed in connection with the preliminary approval motion at least three days prior to filing, if practical. The Preliminary Approval Motion also will seek the setting of a date for individuals to opt out of this Agreement and/or provide objections to this Agreement, which date will be thirty (30) days from the initial mailing of Notice to the Class Members by the Settlement Claims Administrator, or thirty (30) days from the date of re-mailing, whichever is later, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

B.  Plaintiff will file the Motion for Preliminary Approval as "unopposed."

**2. 4    Notice to Class Members**

(A)  **Class List to Settlement Claims Administrator.** Within ten (10) days of the Preliminary Approval Order being executed by the Court, Defendants' Counsel shall provide the Settlement Claims Administrator with the Class List. All information provided regarding the Class Members will be treated as confidential information by the Settlement Claims Administrator and may not be used by the Settlement Claims Administrator for any purpose other than to effectuate the terms of settlement. The Settlement Administrator shall not include a list of Class Members in any affidavit filed in support of approval of this settlement. Notwithstanding any other provision herein, however, within five (5) days after the expiration of the Bar Date, the Settlement Administrator shall provide the parties with a list of the names and addresses of Class Members who have not opted out of this Agreement to be used solely for purposes of administering this Agreement.

(B)  **Notice.** The Notice will inform Class Members about this Agreement and will also advise them of the opportunity to object, opt out, participate in the FLSA Collective by cashing the Settlement Check, and/or appear at the Fairness Hearing. Within twenty (20) days of the entry of the Preliminary Approval Order or as otherwise ordered by the Court, the Settlement Claims Administrator shall send, via First Class United States Mail and email (if available), to all Class Members, the Court–approved Notice as authorized by the Court in the Preliminary Approval Order.

(C)  **Skip Trace and Re-mailing.** In the event that a Notice mailed to a Class Member is returned as undeliverable, the Settlement Claims Administrator shall take reasonable steps to obtain the correct address of such Class Member, including performing a skip trace up to two (2) times, and shall attempt a re-mailing provided it obtains a more recent address. The Settlement Claims Administrator shall also mail a Notice to any Class Member who contacts the Settlement Claims Administrator or Class Counsel during the time period between the initial mailing of the Class Notice and the Bar Date and requests a Notice. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of Notices sent to a Class Member that are returned as undeliverable, as well as the number of any such Notice Forms returned as undeliverable after any subsequent

mailing(s) as set forth in this Agreement.  The Settlement Claims Administrator's costs and expenses, including all costs of locating Class Members, will be paid from the QSF.

**2.5     Class Member Opt-outs.**

(A)     Class Members who choose to opt out of the settlement as set forth in this Agreement must mail via First Class United States Mail, a written, signed statement to the Settlement Claims Administrator that states he or she is opting out of the Settlement, and include his or her name, address, and telephone numbers and statement indicating his or her intention to opt out such as: "I opt out of the Seafield wage and hour settlement." ("Opt-out Statement"). To be effective, an Opt-out Statement must be post-marked by the Bar Date.

(B)     The end of the time period to opt out of the settlement ("Opt-out Period") shall be on or before the Bar Date.

(C)     The Settlement Claims Administrator will stamp the received date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt.  The Settlement Claims Administrator shall provide all Opt-out Statements in its compliance affidavit to be filed with the Application for Final Approval. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(D)     Any Class Member who does not submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, will be bound by the Final Approval Order in this case, and have any NYLL Claims released and dismissed with prejudice as set forth herein.

**2.6     Objections to Settlement.**

(A)     Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing must first do so in writing.  To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail post-marked by the Bar Date.  The statement must include all reasons for the objection, and any supporting documentation.  The statement must also include the name, address and telephone number for the Class Member making the objection.  The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection, supporting documents, as well as a copy of the Notice mailed to the Objector, to Class Counsel and Defendants' Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections.  An Objector may withdraw his or her objections at any time.

(C)    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

**2.7    Fairness Hearing and Application for Final Approval and Dismissal.**

(A)    After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the settlement ("Application for Final Approval"). The Application for Final Approval may contain a compliance affidavit from the Settlement Claims Administrator, an application for attorneys' fees, and supporting affidavit and documents from Class Counsel regarding the fairness, adequacy and reasonableness of the Settlement or any aspect related to this Agreement. The Application for Final Approval may also include a proposed Final Approval Order. All documents shall be provided to Defendants' Counsel at least seven (7) calendar days prior to the Final Fairness Hearing for their review and approval.

(B)    At the Fairness Hearing and through the Application for Final Approval, the Parties shall request that the Court, among other things: (i) finally certify the Class and the FLSA Collective for purposes of settlement only; (ii) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the Settlement; (iii) order the Settlement Claims Administrator to distribute Settlement Checks to Class Members as described in this Agreement; (iv) order Costs and Fees to be paid from the QSF; (v) order the dismissal with prejudice of all NYLL Claims and FLSA Claims asserted in the Litigation, including the NYLL Class Claims of all Class Members who did not opt out; (vi) order entry of the Final Approval Order in accordance with this Agreement; and (vii) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby, including but not limited to the reversion of any uncashed Settlement Checks to Defendants.

(C)    The Final Approval Order will order the Settlement Claims Administrator to (i) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks and made proper withholdings; and (ii) retain copies of all of the endorsed Settlement Checks.

**2.8    Termination of Agreement**

(A)    **Grounds for Settlement Termination**. Either Party may terminate the Agreement if the Court declines to enter the Preliminary Approval Order or Final Approval Order, unless the Court declines to enter the Preliminary Approval Order or Final Approval Order due solely to the amount of attorneys' fees sought by Class Counsel. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees, and if the Court approves the settlement payment amount allocated to the Class Members as set forth in this Agreement, but not the application for attorneys' fees, (i) the Agreement may not be terminated; and (ii) any Court-required reduction of the attorneys' fees will be reallocated to Defendants. The Defendants will not oppose (a) an application for attorneys'

fees of up to one-third of the Gross Settlement Fund, plus litigation costs, to be paid out of the Gross Settlement Fund, (b) any motion for reconsideration of such application, and/or (c) an appeal regarding Class Counsel's application for attorneys' fees.  Defendants may terminate this Agreement if Named Plaintiff refuses to sign a settlement agreement and general release fully releasing Defendants and their current, former and future affiliates and related entities, including, without limitation, parents, subsidiaries, predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees (including, but not limited to, Lynn Doris), partners, members, principals, agents, insurers, coinsurers, re-insurers, shareholders, attorneys (including Defendants' Counsel), and personal or legal representatives from and of any and all past and present matters, claims, demands, and causes of action of any kind whatsoever, including, without limitations, the non-FLSA and non-NYLL claims asserted in *Nicholas Elgar v. Seafield Center, Inc., Seafield Services, Inc. and Lynn Doris*, 18-cv-00591, at which time Named Plaintiff or his counsel shall execute a Final Stipulation and Order of Dismissal with Prejudice dismissing the non-FLSA and non-NYLL claims.  Defendants may also revoke this Agreement if 10% or more of the Class Members file opt out exclusion forms before the Bar Date.

(B)  **Procedures for Termination**.  To terminate this Agreement, the terminating Party shall give written notice to the other Party via email and overnight mail.

(C)  **Effect of Termination**. Termination shall have the following effects:

    i.      The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

    ii.     Defendants shall have no obligation to make any payments to any party, Class Member, or Class Counsel.  However, Defendants shall bear : (1) the costs and fees associated with the Settlement Claims Administrator subsequent to the signing of this Agreement; and (2) the costs and expenses of the Settlement Claims Administrator associated with the mailing of termination notice and advising Class Members of the settlement termination (if notice of the settlement already has been mailed; otherwise, no such notice shall be required), unless the termination is due to Named Plaintiff's refusal to sign the settlement agreement and general release set forth in Section 2.8(A), in which case the parties shall bear these costs equally.

    iii.    If the Court grants preliminary approval but not final approval, the Settlement Claims Administrator will provide a Court-approved notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail.

    iv.    The Parties may jointly or individually seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or to seek Court approval of a renegotiated settlement.

v.   If the Court declines to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, the Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the action prior to the entering of this Agreement.  Defendants retain the right to contest whether the Litigation should be maintained as a class or collective action, and to contest the merits of the claims being asserted in the Litigation. The Preliminary Order approving the settlement and certifying the class for settlement purposes only shall be null and void and the case may only be certified if Plaintiff is granted class or collective certification after full briefing on a motion for such certification. In the event the Court does not finally approve the Settlement, the Proposed Second Amended Complaint for Settlement shall be void *ab initio* and the operative Complaint in this action shall be Plaintiff's Amended Complaint (Docket Entry 18).

## 3.   SETTLEMENT TERMS

### 3.1   Settlement Amount.

(A)   Defendants agree to pay a maximum Settlement Amount of Eighty Five Thousand Dollars and Zero Cents ($85,000.00), plus Employer Payroll Taxes, which shall be used for allocation and calculation purposes to fully resolve and satisfy: (i) any claim for Costs and Fees as approved by the Court; and (ii) any and all amounts to be paid to all Class Members for releasing claims as set forth herein.

(B)   **Default.**  A default under this Agreement shall be considered to have occurred if Defendants fail to make any scheduled payment within ten (10) business days of the due date for such payment pursuant to Section 3.1 ("Default"). Following any Default, the Settlement Claims Administrator or Class Counsel shall send notice of the Default by email and overnight mail (or by certified mail) (the "Default Notice") to Defendants' Counsel.  Defendants shall have seven (7)) days from its receipt of the Default Notice to cure the Default.  If the Default is not timely cured within that seven (7) day period, Defendants shall reimburse reasonable fees and costs associated with Class Counsel's recovery of the scheduled payment, as awarded by the Court.

(C)   **Funding.** Defendants shall fund the Qualified Settlement Fund no less than thirty (30) days after the Final Effective Date in an amount equal to the payments owed under this Agreement, including Employer Payroll Taxes.

(D)   **Reversion.**  If any Settlement Checks remain uncashed after one hundred and twenty (120) days following issuance, Defendants shall seek Court approval for any Settlement Checks not cashed to revert to Defendants.  Such request shall detail the steps undertaken to locate Class Members for purposes of mailing the Settlement Checks.

Within sixty (60) days following issuance of Settlement Checks, the Settlement Claims Administrator shall apprise Defendants' Counsel and Class Counsel of the

names of Class Members who have not yet cashed their Settlement Check(s). No later than ninety (90) days following issuance of Settlement Checks, the Settlement Claims Administrator shall send a supplemental mailing to any Class Member who has not cashed his/her Settlement Check reminding the Class Member of the deadline to do so.

**3.2    Mailing of Settlement Checks and FLSA Endorsement**

(A)    **Mailing.** Settlement Claims Administrator shall mail the Settlement Checks and disburse Class Counsels' Court-approved Costs and Fees within forty (40) days after the Effective Date.

(B)    **Skip Trace and Re-mailing.** In the event that a Settlement Check mailed to a Class Member is returned as undeliverable, the Settlement Claims Administrator shall take reasonable steps to obtain the correct address of such Class Member, including one skip trace, and shall attempt a re-mailing provided it obtains a more recent address. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of Settlement Checks sent to a Class Member that are returned as undeliverable, as well as the number of any such Settlement Checks returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(C)    **FLSA Release**. The checks mailed to FLSA Collective Members shall include the following language on the back of the check as a special endorsement:

> By endorsing this check, I consent to join the action against Defendants styled *Nicholas Elgar v. Seafield Center, Inc., et al.*, 18-cv-00591 (E.D.N.Y) and release Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law which were or could have been brought in this action, including but not limited to claims for unpaid overtime wages and statutory penalties.

**3.3    Attorneys' Fees, Expenses and Costs.**

(A)    At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one-third the Gross Settlement Fund, plus reimbursement of actual litigation expenses and costs to be paid from the QSF. Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

(B)    The substance of Class Counsel's application for attorneys' fees, expenses and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for attorneys' fees, expenses and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval.

(C)     The attorneys' fees, expenses and costs shall be paid from the Qualified Settlement Fund at the time the payments to Class Members are made.

**3.5     Net Settlement Fund and Allocation to Class Members.**

(A)     The Net Settlement Fund shall be distributed to Class Members pursuant to the formula set forth below:

(i)     Class Members will get a point for each dollar in actual compensation paid to Class Members for hours worked over forty (40) at two (2) or more entities for which Class Members did not receive an overtime rate during the period of February 11, 2013 – February 11, 2019.

(ii)    The Net Settlement Fund, less the errors and omissions fund in subsection B below, will be divided by the aggregate number of points accrued by all of the Class Members during the period of February 11, 2013 – February 11, 2019 ("Point Value").

(iii)   Each Class Member's total points will be multiplied by the Point Value to determine his or her Individual Settlement Amount.

(iv)    Each Class Member's Individual Settlement Amount below $200 will be increased to $200.  The remaining Class Members' Individual Settlement Amounts shall be reduced *pro rata* to account for these increases.

(B)     To account for any errors and omissions in calculating the Individual Settlement Amount, $5,000 from the Net Settlement Fund to be used to resolve any disputes that may arise concerning the distribution of funds or payment calculations.  Following the Bar Date, the final payment amounts for Class Members (with the exclusion of those Class Members receiving the Minimum Payment set forth in subsection A(iv) above) will be recalculated to include, on a *pro rata* basis, any amounts remaining from the $5,000 that was reserved. These calculations shall be based on Defendants' records.  Defendants' records are presumed to be correct unless the Class Member proves otherwise with documentary evidence. The Settlement Claims Administrator will evaluate the information the Class Member provides and will make the final decision as to any dispute.

(C)     Defendants will pay the employer's share of taxes in addition to the Net Settlement Fund.

(D)     Defendants and the Settlement Claims Administrator shall exchange such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.6.

(E)     All Settlement Payments to Class Members shall be deemed to be paid to such Class Members solely in the year in which such payments actually are received by the Class Members.  It is expressly understood and agreed that the receipt of any such Settlement Payment will not entitle any Class Member to additional compensation or benefits under

13

any of Defendants' bonus, profit-sharing, or other compensation or benefit plans or agreements in place during the Class Period, nor will it entitle any Class Member to any increased retirement, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this Settlement that the payments provided for in this Agreement are the sole payments to be made by Defendants to the Class Members (with the exception of any payments due to Named Plaintiff as consideration for a general release including, *inter alia*, the non-FLSA and non-NYLL claims asserted in *Nicholas Elgar v. Seafield Center, Inc., Seafield Services, Inc. and Lynn Doris*, 18-cv-00591 ) and that the Class Members are not entitled to any new or additional compensation or benefits as a result of having received the Settlement Payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the Relevant Period).

**3.6     Tax Characterization.**

(A)     For tax purposes, 50% of payments to Class Members pursuant to Section 3.5 shall be treated as W-2 wage payments and 50% of such payments shall be treated as 1099 non-wage income as liquidated damages, statutory penalties and interest.

(B)     Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.3 shall be made without withholding. Class Counsel will receive a Form 1099 for this payment.

(C)     The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portion of the payments to Class Members shall not be Defendants' responsibility.

**4.     RELEASE**

**4.1     Release of Claims.**

(A)     By operation of the entry of the Judgment and Final Approval, except as to such rights or claims as may be created by this Agreement, each individual Class Member, who does not timely opt out pursuant to this Agreement, on his or her behalf and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Releasees, and all persons acting by, through, under or in concert with any of them, from all wage and hour claims asserted, or wage and hour claims that could have been asserted, against Defendants under the NYLL or other state or local law based on the facts asserted in the Proposed Second Amended Complaint for Settlement, including, without limitations, all state law claims for unpaid overtime,

14

premium, regular, straight or minimum wages, and related claims for penalties, statutory notice or statement violations, interest, liquidated damages, attorneys' fees, costs, and expenses, to the maximum possible extent permitted by law as against any or all Defendants accruing up to the date of preliminary approval.

Each FLSA Collective Member who cashes his or her Settlement Check also releases all wage and hour claims which could have been asserted against Defendants under the FLSA based on the facts asserted in the Proposed Second Amended Complaint for Settlement, including, without limitations, all claims for unpaid overtime, regular, straight or minimum wages, and related claims for penalties, statutory notice or statement violations, interest, liquidated damages, attorneys' fees, costs, and expenses, to the maximum possible extent permitted by law as against any or all Defendants accruing up to the date of the Preliminary Approval Order.

Defendants' Counsel may file the proof of cashed checks for such FLSA Collective Members with the Court, in conformity with 29 U.S.C. § 216(b) and this Agreement, redacting any personal or confidential information.

(B) Except as provided in this Agreement, upon payment of the Attorneys' fees, expenses, and costs approved by the Court, Plaintiff, on behalf of himself , the Class Members and each individual Class Member, hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members. Class Counsel understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, expenses and costs associated with Class Counsel's representation in the Litigation.

**4.2**   **Denial of Liability.**  Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants, nor as an admission that a class should be certified for any purpose in this case other than settlement purposes.

**5.**   **INTERPRETATION AND ENFORCEMENT**

**5.1**   **Cooperation Between the Parties; Further Acts**.  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2**   **No Assignment and Release of Lien**.  Class Counsel and Named Plaintiff represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.  Class Counsel and Named Plaintiff represent that they have obtained a written release of the lien Borrelli & Associates PLLC has asserted on any settlement

15

of Named Plaintiff's Claim, as set forth in the August 16, 2017 correspondence from Michael J. Borelli, Esq.

5.3    **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement. This Agreement fully supersedes the tolling agreement entered into between the Parties on April 10, 2019.

5.4    **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5    **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6    **Captions**. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7    **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.8    **Continuing Jurisdiction**. The Parties shall request the Court to retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.9    **Waivers, etc. In Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.10    **When Agreement Becomes Effective; Counterparts**. This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.11 **Signatures**.   This Agreement is valid and binding if signed by the Parties' authorized representatives.

5.12 **Facsimile and Email Signatures**.  Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.13 **Construction**.  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

Dated:  July 28, 2020

Seafield Center, Inc.

By: _____

Its: _____

Seafield Services, Inc.

By: _____

Its: _____

Seafield Resources, Inc.

By: _____

Its: _____

Dated:  July 28, 2020

_____
Nicholas Elgar

4850-1944-7492, v. 1

17

# EXHIBIT A

**Outten & Golden LLP**
Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS ELGAR, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SEAFIELD CENTER, INC., SEAFIELD SERVICES, INC., and SEAFIELD RESOURCES, INC.,<br><br>Defendants. | **No. 18 Civ. 00591 (ARL)**<br><br>**SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Nicholas Elgar ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, Outten & Golden LLP, complaining of the conduct of Defendants Seafield Center, Inc., Seafield Services, Inc., and Seafield Resources, Inc. (collectively, "Seafield" or "Defendants") alleges as follows:

### PRELIMINARY STATEMENT

1.     This lawsuit seeks to recover unpaid overtime compensation and other damages for Plaintiff and similarly situated co-workers who were employed simultaneously in non-exempt positions, including but not limited to case manager, addiction counselor, sober house manager, and/or registered nurse, by two or more Defendants during the relevant statutory period.

2.     Seafield is an alcohol and drug addiction treatment provider which owns and operates an inpatient treatment center, outpatient treatment facilities, and sober living recovery homes in Long Island, New York.

3.     While simultaneously employed by Defendants in the positions of addiction counselor and case manager at different facilities, Plaintiff consistently worked more than 40 hours per workweek without receiving overtime compensation for all of the overtime hours he worked.

4.     Throughout the relevant period, Defendants deprived Plaintiff and similarly situated co-workers of their earned overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New York Labor Law ("NYLL" or "N.Y. Lab. Law"), N.Y. Lab. Law, Article 19 §§ 650, *et seq.*, and Article 6, §§ 190, *et seq.*, and the supporting New York State Department of Labor Regulations ("collectively, New York Wage Laws").

5.     To avoid paying Plaintiff and similarly situated co-workers overtime compensation for all of the overtime hours they worked, Defendants instituted a policy or practice of placing employees in multiple non-exempt positions at different facilities and issuing separate paychecks for each position that failed to aggregate employees' hours.

6.     Plaintiff brings this action on behalf of himself and all similarly situated current and former employees who worked for Defendants nationwide during the period February 11, 2016 to the date of final judgment in this action pursuant to the FLSA.

7.     Plaintiff seeks permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all persons who are presently or have at any time during the relevant period, worked for two or more Defendants simultaneously in non-exempt positions nationwide.

2

8. Plaintiff also brings this action to recover unpaid overtime compensation and other damages for himself and similarly situated employees who worked for Defendants in New York as a Fed. R. Civ. P. 23 class action under the New York Wage Laws.

## JURISDICTION & VENUE

9. This Court has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

10. This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

11. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants reside in this District.

## THE PARTIES

### *Plaintiff*

13. Plaintiff is a resident of Suffolk County, New York.

14. Plaintiff was employed by Defendants from approximately December 2015 to December 2018 as an addiction counselor at Seafield's inpatient treatment facility in Westhampton, New York.

3

15.     Plaintiff was simultaneously employed by Defendants from approximately April 2016 to December 2016 as a  case manager at Seafield's outpatient facility in Riverhead, New York.

16.     At all times relevant to the Second Amended Class and Collective Action Complaint, Plaintiff was an "employee" within the meaning of all applicable statutes.

17.     During the relevant period, Plaintiff regularly worked more than 40 hours in a workweek but was not paid premium overtime compensation for all hours he worked over 40.  For example, the weeks of July 22 and July 29, 2016, Plaintiff worked approximately 27 overtime hours without being paid premium overtime compensation.

### *Defendants*

#### *Defendant Seafield Center, Inc.*

18.     Upon information and belief, Defendant Seafield Center, Inc. ("Seafield Center") is a corporation formed under the laws of the State of New York with a principal place of business in Westhampton Beach, New York.

19.     Upon information and belief, Defendant Seafield Center has maintained control, oversight, and direction over its operations and employment practices.

20.     At all times hereinafter mentioned, Defendant Seafield Center was Plaintiff's "employer" within the meaning of all applicable statutes.

21.     At all relevant times, Defendant Seafield Center maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

4

22.     Defendant Seafield Center has applied the same employment policies, practices, and procedures to all employees employed simultaneously in non-exempt positions nationwide, including policies, practices, and procedures with respect to payment of overtime compensation.

23.     Defendant Seafield Center's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

### *Defendant Seafield Services, Inc.*

24.     Upon information and belief, Defendant Seafield Services, Inc. ("Seafield Services") is a corporation formed under the laws of the State of New York with a principal place of business in Medford, New York.

25.     Upon information and belief, Defendant Seafield Services has maintained control, oversight, and direction over its operations and employment practices.

26.     At all times hereinafter mentioned, Defendant Seafield Services was Plaintiff's "employer" within the meaning of all applicable statutes.

27.     At all relevant times, Defendant Seafield Services maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

28.     Defendant Seafield Services has applied the same employment policies, practices, and procedures to all employees employed simultaneously in non-exempt positions nationwide, including policies, practices, and procedures with respect to payment of overtime compensation.

29.     Defendant Seafield Service's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

5

### Defendant Seafield Resources, Inc.

30.     Upon information and belief, Defendant Seafield Resources, Inc. ("Seafield Resources") is a corporation formed under the laws of the State of New York with a principal place of business in Westhampton, New York.

31.     Upon information and belief, Defendant Seafield Resources has maintained control, oversight, and direction over its operations and employment practices.

32.     At all times hereinafter mentioned, Defendant Seafield Resources was Plaintiff's "employer" within the meaning of all applicable statutes.

33.     At all relevant times, Defendant Seafield Resources maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to them.

34.     Defendant Seafield Resources has applied the same employment policies, practices, and procedures to all employees employed simultaneously in non-exempt positions nationwide, including policies, practices, and procedures with respect to payment of overtime compensation.

35.     Defendant Seafield Resource's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

### Joint Employment

36.     Upon information and belief, Defendants share common ownership, officers, and employees, centralized human resources and administrative functions, and a common head office.

6

37.     Upon information and belief, Seafield uses employees interchangeably, for example directing employees at the outpatient facility to perform administrative work benefiting the inpatient facilities.

38.     Upon information and belief, Seafield's sober living facilities require residents to enroll in Seafield's outpatient programs, and Seafield's patients are frequently transferred between facilities in its network.

## FLSA COLLECTIVE ACTION CLAIMS

39.     Plaintiff brings the First Cause of Action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of himself and all similarly situated persons who work or have worked simultaneously in non-exempt positions for two or more Defendants during the relevant period and who elect to opt in to this action.

40.     Upon information and belief, there are approximately 40 Seafield employees who are similarly situated to Plaintiff and were denied overtime compensation for combined hours worked over forty per workweek.

41.     Plaintiff is acting on behalf of similarly situated employees' interests as well as his own interests in bringing this action.

42.     Defendants unlawfully required Plaintiffs and similarly situated individuals to work in excess of 40 hours per week without paying them overtime compensation at a rate of at least one and one-half times their regular hourly rate for all overtime hours worked.

43.     Plaintiff seeks to proceed as a collective action with regard to the First Cause of Action pursuant to 29 U.S.C. § 216(b) on behalf of himself and the following group of persons:

> all individuals who were employed simultaneously in non-exempt
> positions by two or more Defendants, and who worked for more than

7

>forty (40) hours per week in at least one workweek between
>February 11, 2016 and the date of final judgment in this action
>(hereinafter referred to as the "FLSA Collective" and the
>"Collective Period," respectively).

44.     Defendants were aware or should have been aware that the law required them to

pay non-exempt employees, including Plaintiff and the FLSA Collective, an overtime premium of

one and one-half times their regular rate of pay for all work-hours Defendants suffered or permitted

them to work in excess of 40 per workweek.  Upon information and belief, Defendants applied the

same unlawful policies and practices to their non-exempt employees nationwide.

45.     The FLSA Collective members are readily identifiable and locatable through the

use of the Defendants' records.  The FLSA Collective should be notified of and allowed to opt-in

to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the

FLSA Collective, who have been unlawfully deprived of overtime pay in violation of the FLSA,

will be unable to secure compensation to which they are entitled, and which has been unlawfully

withheld from them by the Defendants.

### NEW YORK CLASS ALLEGATIONS

46.     Plaintiff brings the Second, Third, and Fourth Causes of Action on his own behalf

and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of

persons:

>all individuals who were employed simultaneously in non-exempt
>positions by two or more Defendants, and who worked for more than
>forty (40) hours per week in at least one workweek between
>February 11, 2013 and the date of final judgment in this action
>(hereinafter referred to as the "New York Class" and the "New York
>Class Period," respectively).

47.     Excluded from the New York Class are Defendants' legal representatives,

8

officers, directors, assigns, and successors, or any individual who has, or who at any time during

the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judge(s)' immediate family; and all persons who will submit

timely and otherwise proper requests for exclusion from the New York Class.

48.     The persons in the New York Class are so numerous that joinder of all members

is impracticable.

49.     Upon information and belief, the size of the New York Class is at least forty

individuals.

50.     The Second, Third, and Fourth Causes of Action are properly maintainable as a

class action under Fed. R. Civ. P. 23(b)(3).  There are questions of law and fact common to the

New York Class that predominate over any questions solely affecting individual members of the

New York Class, including but not limited to:

    a.     whether the Defendants failed to keep accurate time records for all hours worked by Plaintiff and the New York Class;

    b.     whether the Defendants failed to pay proper compensation to Plaintiff and the New York Class for all work-hours in excess of 40 per workweek in violation of and within the meaning of the N.Y. Lab. Law Article 6, §§ 190, *et seq.* and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142;

    c.     the nature and extent of New York Class-wide injury and the appropriate measure of damages sustained by Plaintiff and the New York Class;

    d.     whether Defendants acted willfully or with reckless disregard in their failure to pay Plaintiff and the New York Class; and

    e.     the nature and extent of class-wide injury and the measure of damages for those injuries.

9

51.    Plaintiff will fairly and adequately protect the interests of the New York Class and has no interests antagonistic to the class.  Plaintiff is represented by attorneys who are experienced and competent in both class litigation and employment litigation.

52.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where an individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against the corporate Defendants.  The damages sustained by individual class members are small compared to the expense and burden of individual prosecution of this litigation.  Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

53.    Further, Plaintiff and the New York Class have been equally affected by Defendants' failure to pay proper wages and other violations.  Moreover, members of the New York Class still employed by the Defendants may be reluctant to raise individual claims for fear of retaliation.

54.    Defendants have acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

55.    Plaintiff's claims are typical of those of the New York Class.  Plaintiff and the other New York Class members were subjected to the Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay proper wages and the failure to keep adequate records.  Plaintiff's claims are typical of those of the other class members.

## COMMON FACTUAL ALLEGATIONS

56.     Plaintiff and the members of the FLSA Collective and the New York Class (collectively, "Class Members") have been victims of Defendants' common policy and plan that has violated their rights under the FLSA and New York Wage Laws by requiring non-exempt employees to work in excess of 40 hours per week and denying them overtime compensation for all overtime hours worked.  At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

57.     Upon information and belief, Defendants have a policy and pattern or practice of placing employees in multiple non-exempt positions at different facilities and issuing separate paychecks for each position that failed to aggregate employees' hours.

58.     Defendants failed to pay Plaintiff and Class Members time and one-half for all hours worked over 40 in a workweek in violation of the FLSA and the New York Wage Laws.

59.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA and the New York Wage Laws.

60.     Defendants' policy and pattern or practice includes but is not limited to:

a.      willfully failing to keep payroll records as required by the FLSA and the New York Wage Laws; and

b.      willfully failing to pay its employees, including Plaintiff and Class Members, overtime wages for all of the overtime hours that they worked.

61.     Defendants were or should have been aware that the FLSA required them to pay their non-exempt employees overtime compensation for all hours worked in excess of 40 per week.

62.     Defendants' failure to pay Plaintiff and Class Members overtime wages for their work in excess of 40 hours per week was willful, intentional, and in bad faith.

63.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

**FIRST CAUSE OF ACTION**
**FLSA – Overtime Wages**
**29 U.S.C. §§ 201, *et seq.***
**(Brought by Plaintiff Individually and on Behalf of the FLSA Collective)**

64.     Plaintiff realleges and incorporate by reference all allegations in all preceding paragraphs.

65.     Plaintiff and members of the FLSA Collective are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

66.     Defendants employed Plaintiff and members of the FLSA Collective for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and members of the FLSA Collective for all of the time worked in excess of 40 hours per week, at a rate of at least one and one-half times their regular hourly rate, in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a)(1).

67.     Defendants failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiff and the FLSA Collective.

68.     Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

69.     As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the members of the FLSA Collective have incurred damages thereby and Defendants are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

12

## SECOND CAUSE OF ACTION
### NYLL – Unpaid Overtime
### N.Y. Lab. Law §§ 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2
### (Brought by Plaintiff Individually and on Behalf of the New York Class)

70.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

71.     Defendants employed Plaintiff and members of the New York Class for workweeks longer than 40 hours and willfully failed to compensate Plaintiff and the New York Class for all of their time worked in excess of 40 hours per week, at a rate of at least one and one-half times their regular hourly rate, in violation of the requirements of the NYLL.

72.     By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law §§ 650, *et seq.*; 12 N.Y.C.R.R. Part 142-2.2.

73.     Defendants failed to keep, make, preserve, maintain and furnish accurate records of time worked by Plaintiff and members of the New York Class.

74.     Defendants have a policy and practice of refusing to pay overtime compensation for all hours worked to Plaintiff and members of the New York Class.

75.     Defendants' failure to pay overtime compensation to Plaintiff and members of the New York Class was willful within the meaning of N.Y. Lab. Law § 663.

76.     As a consequence of the willful underpayment of wages, alleged above, Plaintiff and the New York Class members have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensation and such other legal and equitable relief due to Defendants' unlawful and willful conduct as the Court deems just and proper.

77.     Plaintiff and the New York Class members seek recovery of liquidated damages, attorneys' fees, and costs to be paid by Defendants as provided by the NYLL.

13

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the FLSA Collective and the New York Class members, requests the following relief:

A.   Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B.   Certification of this action as a class action on behalf of the New York Class;

C.   Designation of Plaintiff as Representative of the New York Class he seeks to represent;

D.   Designation of Plaintiff's counsel of record as Class Counsel for the New York Class;

E.   An award of damages, liquidated damages, and restitution to be paid by Defendants according to proof;

F.   Appropriate statutory penalties;

G.   Appropriate equitable and injunctive relief to remedy violations, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices under the FLSA and the New York Wage Laws and/or a declaration that Defendants' acts violate the FLSA and the New York Wage Laws;

H.   Attorneys' fees and costs of suit, including expert fees and costs.

14

I.      Pre-judgment and post-judgment interest, as provided by law; and

J.      Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 28, 2020
       New York, New York

Respectfully submitted,

**OUTTEN & GOLDEN LLP**

Michael J. Scimone
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone:  (212) 245-1000
Facsimile:  (646) 509-2060

*Attorneys for Plaintiff and the Putative Class and Collective*

15

# EXHIBIT B

NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION
LAWSUIT AND FAIRNESS HEARING

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

# If you were employed simultaneously in non-exempt positions by two or more of the following entities: Seafield Center, Inc., Seafield Services, Inc., and/or Seafield Resources, Inc., and worked for more than forty (40) hours per week, you may be entitled to a payment from a class action lawsuit settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- This notice is being sent to you because records reflect that you meet the criteria above in at least one workweek between February 11, 2013 and **[date of execution of FSA]**.

- Nicholas Elgar ("Plaintiff") has sued Seafield, alleging that Seafield failed to properly pay overtime for hours over forty (40) per week at two or more Seafield entities, in violation of federal and state law.

- To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, the parties have agreed to settle the action for up to $85,000.

- Under the settlement, you are entitled receive approximately $_____, half of which is subject to taxes and withholdings, like any other paycheck.

- Neither Class Counsel nor Seafield makes any representations concerning tax consequences of this settlement, and you are advised to seek your own personal tax advice.

- Your legal rights may be affected. You have a choice to make now:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **CASH THE SETTLEMENT CHECK** | If you cash the settlement check, you will remain a part of the case and you will release wage claims under state law, as well as federal Fair Labor Standards Act claims. |
| **DO NOTHING** | Get no payment, but you will release certain claims under state law, but not Fair Labor Standards Act claims. |
| **EXCLUDE YOURSELF** | Get no payment. You keep the right to bring your own lawsuit against Seafield for unpaid wages between February 1, 2013 and [preliminary approval]. |

| | |
|---|---|
| **OBJECT** | Write to the Court about why you disapprove of the settlement. If you exclude yourself, you may not object. |

- These rights and options — and the deadlines to exercise them — are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

## BASIC INFORMATION

| **1.   Why did I get this notice?** |
|---|

Seafield's records state that you worked simultaneously in non-exempt positions for two or more Seafield entities (Seafield Center, Inc., Seafield Services, Inc., and/or Seafield Resources, Inc.) and worked more than forty (40) hours per week for such entities between February 11, 2013 and [FSA date].   The Court ordered that you be sent this notice because you have a right to know about a proposed settlement of a class action lawsuit, and about all of your options, before the Court decides whether to approve the settlement. If the Court approves the settlement and after objections and appeals are heard, payments will be mailed to class members who do not exclude themselves.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the Eastern District of New York. This lawsuit is known as *Elgar v. Seafield Center, Inc., et al.*, 18-cv-00591 (RRM)(ARL) (E.D.N.Y.).   The person who filed the lawsuit is the "Plaintiff".   Seafield is called the "Defendants".

| **2.   What is this lawsuit about?** |
|---|

This lawsuit is about whether Seafield improperly denied employees overtime pay when they worked simultaneously in non-exempt positions at two or more Seafield entities for more than forty (40) hours per week (for example, employees who worked thirty (30) hours per week at Seafield Center, Inc., and twenty (20) hours per week at Seafield Services, Inc.).   Seafield denies it did anything wrong and continues to believe that the Seafield entities were not single or joint employers of these employees and that it was not obligated to pay overtime for these hours.

| **3.   Why is this a class action?** |
|---|

In a class action, one or more people called "Class Representatives" sue on behalf of people who have similar claims. The people together are a "Class" or "Class Members."   In the proposed class action settlement, one court resolves the issues for everyone in the Class—except for those who choose to exclude themselves from the Class.

| **4.   Why is there a settlement?** |
|---|

The Court did not decide in favor of Plaintiff or Defendants. Both sides believe they would have

prevailed in the case, but there was no decision ruling in favor of either party. Instead, both sides agreed to a settlement. That way, they avoid the cost of a trial, the risk of losing, and the delay of litigating the case and of potential appeals, and the people affected will get compensation. The Class Representative and his attorneys think the settlement is best for all Class Members.

## WHO IS IN THE SETTLEMENT

| 5. How do I know if I am part of the settlement? |
| --- |

You are automatically a member of the Class if you were employed simultaneously in non-exempt positions by two or more of the following entities: Seafield Center, Inc., Seafield Services, Inc., and/or Seafield Resources, Inc., and worked for more than forty (40) hours per week between February 11, 2019 and [FSA date].

| 6. I'm still not sure if I am included. |
| --- |

If you are still not sure whether you are included, you can ask for free help. You can contact the Claims Administrator as follows:

Seafield Settlement
**[TPA Contact]**

## THE SETTLEMENT BENEFITS — WHAT YOU GET

| 7. What does the settlement provide? |
| --- |

Seafield has agreed to pay up to a maximum of $85,000 to eligible Class and Collective Action Members to be allocated among current and former employees who qualify for a settlement payment based upon weeks in which they worked over forty (40) hours per week for two or more Seafield entities in non-exempt positions. This Settlement Amount will cover payments to participating Class and Collective Action Members after payments to Class Counsel for attorneys' fees, litigation costs and the costs of administrating the settlement.

| 8. What does the settlement provide? |
| --- |

Based on the formula that has been preliminarily approved by the Court, you will be entitled to receive approximately $ _____, half of which is considered settlement of a claim for wages and is subject to applicable taxes and withholdings. The allocation formula takes into account the number of weeks you worked over forty (40) hours for two or more Seafield entities in non-exempt positions during the applicable period. Settlement Agreement contains the exact allocation formula. You may obtain a copy of the Settlement Agreement by following the instructions in Paragraph 22, below.

## HOW YOU GET A PAYMENT

| 9. How can I get my payment? |
| --- |

You will be sent a settlement check if and when the Court approves the settlement and after all appeals have been exhausted.  If you choose to exclude yourself, then you will not receive a payment.

| **10. When will I get my payment?** |
|---|

The Court will hold a hearing on **[Date of Final Fairness Hearing]**, at **[Time]** to determine whether to approve the settlement. If the Court approves the settlement, there may be appeals after that. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

| **11. What am I giving up to get a payment or stay in the Class?** |
|---|

Unless you exclude yourself (as explained in Paragraph 12 below), you will remain in the Class. This means that you cannot sue, continue to sue, or be part of any other lawsuit against Seafield about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Seafield, on your own, about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

| **12. How do I opt out of the settlement?** |
|---|

To exclude yourself from the settlement, you must send a letter by mail, fax, or email that includes the words, "I opt out of the Seafield overtime settlement." You must include your name, job title, address, telephone number, and signature. Your exclusion request must be postmarked or received no later than **[Bar Date]** and must be sent to:

Seafield Settlement Exclusions
**[TPA Contact]**

If you ask to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may also be able to sue (or continue to sue) Seafield in the future about some of the legal issues in this case. If you wish to exclude yourself in order to file an individual lawsuit against Seafield or for any other reason, you should investigate the exclusion process, including speaking to a lawyer as soon as possible if appropriate, because your claims are subject to a statute of limitations, which means that they will expire on a certain date. If you exclude yourself from the lawsuit, you may not object to it.

| **13. If I don't exclude myself, can I sue Seafield for the same thing later?** |
|---|

No. Unless you exclude yourself, you give up any rights to sue Seafield for the same claims in this case. If you have a pending lawsuit, speak to your lawyer in that case immediately to see if this settlement will affect your other case. Remember, the exclusion deadline is **[Bar Date]**.

| **14. If I exclude myself, can I get money from this settlement?** |
|---|

No. If you exclude yourself, you will not receive any money from this lawsuit. But, you may sue, continue to sue, or be part of a different lawsuit against Seafield regarding these same claims. If you submit an exclusion request, you will be deemed to have excluded yourself from the settlement and you will not receive a payment.

## THE LAWYERS REPRESENTING YOU

| **15. Do I have a lawyer in this case?** |
|---|

The Court has decided that the lawyers at the law firms of Outten & Golden LLP are qualified to represent you and all Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers. You do not need to retain your own attorney in order to participate as a Class Member. If you opt out of the Class and want to be represented by your own lawyer, you may hire one at your own expense.

| **16. How will the lawyers be paid?** |
|---|

Class Counsel will ask the Court to approve payment of up to one-third of the Settlement Amount for attorneys' fees. These fees would compensate Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. Class Counsel will also ask the Court to approve payment of up to $_____ for their out-of-pocket costs, excluding the cost of the Claims Administrator. The cost of the Claims Administrator will also come from the settlement fund. The Court may award less than these amounts. Seafield has agreed not to oppose these fees and costs.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

| **17. How do I tell the Court that I don't like the settlement?** |
|---|

If you're a Class Member, you can object to the settlement if you disapprove of any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter by mail, fax, or email that includes the words "I object to the settlement in the Seafield overtime litigation" as well as all reasons for the objection. Be sure to include your name, job title, address, telephone number, and your signature. Send the objection to:

Seafield Settlement Objections
**[TPA Contact]**

Your letter must be postmarked or received no later than **[Bar Date].**

| 18. What's the difference between objecting and excluding? |
| --- |

Objecting is simply telling the Court that you disapprove of something about the settlement. You can object only if you stay in the Class. If you exclude yourself from the settlement, you may not object. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to. If you wish to bring anything to the Court's attention about the settlement, you should provide it in writing to the Claims Administrator according to Paragraph 17 above, who will provide your letter to the Court before the fairness hearing.

| 19. When and where will the Court decide whether to approve the settlement? |
| --- |

The Court will hold a Fairness Hearing on **[Date of Final Fairness Hearing]**, at **[Time]**, at the United States District Court for the Eastern District of New York, 944 Federal Plaza, Central Islip, New York, in Courtroom 810.

At this hearing the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

| 20. Do I have to come to the hearing? |
| --- |

No. Class Counsel will answer questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you returned your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

| 21. May I speak at the hearing? |
| --- |

If you file a timely Objection to the Settlement, you may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include the words "I intend to appear at the Fairness Hearing" in your written objection, which must be filed according to the procedure described in

Paragraph 17, above. Your testimony at the Fairness Hearing will be limited to those reasons that are included in your written objection. You cannot speak at the hearing if you exclude yourself from the settlement.

## GETTING MORE INFORMATION

| 22. Are there more details about the settlement? |
| --- |

This notice summarizes the proposed settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement by sending a request, in writing, to:

Seafield Settlement

**[TPA Contact]**

| 23. How do I get more information? |
| --- |

If you have other questions about the settlement, you can contact the Claims Administrator, or Class Counsel at the addresses and/or telephone numbers below.

Michael Scimone
Jared Goldman
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000

Dated: _____, 2020